SCHMIDT v. JEWETT et al.

(Supreme Court, Appellate Division, Second Department. June 29, 1908.)

1. WILLS—CONSTRUCTION—DESIGNATION OF LEGATEES—"LEGAL ISSUE."
   A gift to the "legal issue" of testator's daughter, after a life estate in her, is a gift to the descendants of testator's daughter, and is not limited to her children.
   [Ed. Note.—For other definitions, see Words and Phrases, vol. 5, pp. 4063–4064.]

2. JUDGMENT—CONCLUSIVENESS—PERSONS CONCLUDED—"LEGAL ISSUE."
   A judgment declaring that the words "legal issue," in a gift to the legal issue of testator's daughter after a life estate in her, were intended by testator to mean only the children of his daughter, and not her descendants, is not binding on the then unborn grandchildren of testator's daughter, since, if they take at all, it is not by representation. but directly,·and as it were by purchase as descendants of testator's daughter.

Appeal from Special Term, Kings County.

Action by Melinda P. Schmidt, as executrix of the will of Bache McEvers Schmidt, deceased, against Elise M. Jewett, Fritz Leopold

Schmidt, Jr., and others. From the judgment, defendant Fritz Leopold Schmidt, Jr., appeals. Affirmed.

See 108 App. Div. 322, 95 N. Y. Supp. 631.

The following is the portion of the opinion of Carr, J., at Special Term, hereinafter referred to:

As to the interests of the respective parties in remainder in the fund set apart during the life of Melinda Schmidt: The mere fact that Bache Schmidt is dead and has left debts still unpaid, even though he died possessed of a vested remainder in the fund in question, would be no sufficient reason for a present distribution to his estate of his share in that fund. The testator directed expressly that this fund should be held intact during the life of his aliquot daughter Melinda, and become payable only "at her death to her legal issue, after they severally reach the full age of twenty-one years." The construction asked for as to this clause by the parties contending in this action is not without its difficulties, if the question be properly up for decision now. Much has been said in reported decisions as to the meaning of the words "legal issue" as used in wills. Sometimes they have been held to mean "children," and at other times it is said they mean primarily descendants." Phelps v. Cameron, 109 App. Div. 798, 96 N. Y. Supp. 1014. If these words "lawful issue," as used in the first clause of the Pollen will, mean "descendants," then it may seem premature now to attempt to define the exact interest which the decedent Bache Schmidt, or any of his deceased brothers, took in this fund, as the number of these descendants cannot be fixed until Melinda Schmidt dies.

In this action the court is asked to make various interpretations of the words "lawful issue" as used in the aforesaid clause of the Pollen will. The guardians of the defendant infants, who are the children of the defendant Fritz Schmidt and Elise Jewett, children of Melinda Schmidt and grandchildren of the testator, Pollen, ask that the words "lawful issue" be construed as meaning "descendants" of Melinda Schmidt, and that each of said descendants now in being, or who may hereafter be in existence at the death of Melinda Schmidt, be adjudged to take the fund in equal shares per capita. The defendants Elise Jewett and Fritz Schmidt ask that these words may be construed as meaning only such children of Melinda Schmidt as may survive her, while other defendants ask that the words be interpreted as meaning such children of Melinda Schmidt as were in existence at the time of the death of the testator, Pollen, and such others as may come into being before the death of Melinda, and that each of such children be adjudged to have or to have had an absolute vested remainder in the fund.

As in the 1880 judgment in Colgate v. Schmidt, this clause of the will was construed in an action in which all the parties then in being were before the court, a question arises as to how far that judgment is binding on this point upon the parties to this action. If it binds the present parties, then there is no necessity for any further interpretation. Of course, none of the now living children of Fritz Schmidt or Elise Jewett were before the court in the Colgate action, as they were then unborn. That judgment made no provision for the protection of their possible interest in the fund on their coming into being. If any rights which they may have on the death of Melinda Schmidt would come to them by representation of their respective parents, Fritz Schmidt and Elise Jewett, then the judgment of 1880 would bind them, as it had bound their privies. Thorn v. De Breteuil, 179 N. Y. 64, 71 N. E. 470.

In the judgment in the Colgate action the words "lawful issue," as used in the first clause of the Pollen will, were adjudged to have been intended by the testator as meaning only the children of his daughters Melinda and Ann Eliza, surviving their respective parents. It seems to me that this adjudication cannot bind the then unborn children of Fritz Schmidt and Elise Jewett, who are now parties to this action, because, if they take at all, it is not by representation, but directly, and, as it were, by purchase as descendants of Melinda Schmidt. Monarque v. Monarque, 80 N. Y. 320; Kilpatrick v. Barron, 125 N. Y. 751, 26 N. E. 925; Smith v. Secor, 157 N. Y.

402, 52 N. E. 179. It is evident that, in construction of this will by the judgment of 1880, the gifts over of the corpus of the funds on the death of the beneficiaries for life were considered as gifts to classes, the members of which could be determined only at the termination of the precedent life estates. These classes consisted, respectively, of the "lawful issue" of the daughters Melinda and Ann Eliza. The court must have considered the words "lawful issue" to have been used by the testator in the sense of "children" of the life tenants. On no other theory does its decision on this particular question seem intelligible to me. If these words "lawful issue" were used as synonymous with "children," then the judgment of 1880 is absolutely correct, even from an academic viewpoint. The well-established rule of law is, however, that "issue" must be deemed to mean "descendants," unless there is something in the context of the will or in the extrinsic circumstances to indicate a contrary intention. Phelps v. Cameron, ut supra; Drake v. Drake, 134 N. Y. 220, 32 N. E. 114, 17 L. R. A. 664; Soper v. Brown, 136 N. Y. 244, 32 N. E. 768, 32 Am. St. Rep. 731; N. Y. Life Co. v. Viele, 161 N. Y. 11, 55 N. E. 311, 76 Am. St. Rep. 238; Pearce v. Rickard, 18 R. I. 142, 26 Atl. 38, 19 L. R. A. 472, 49 Am. St. Rep. 755.

I can find nothing in the context of the will which indicates that the testator used these words "lawful issue" in any sense other than their strict legal meaning. In the very clause in which they appear, he subsequently uses the word "children," but with reference to an entirely distinct subject-matter. In the fifth clause of the will he makes a disposal of the residue of his estate to his "grandchildren." We find him using the words "lawful issue" "children," and "grandchildren" in the order stated, but with reference to entirely distinct provisions. There is nothing in the grammatical or rhetorical composition of the will to indicate that these terms were employed synonymously or interchangeably. Nor does there appear anything in the extrinsic circumstances to shed any helpful light on the testator's particular intention. I am thus led to differ from the judgment of 1880 in the interpretation of the words "lawful issue" as they appear in this will. To my mind it must be deemed that they were used in the sense of "descendants" and embrace all descendants of Melinda P. Schmidt who may be in being at the termination of her life interest in the fund. The gift to this "lawful issue" is a gift to a class. Teed v. Morton, 60 N. Y. 506; Delaney v. McCormack, 88 N. Y. 183.

The gift here is of an aggregate sum of $200,000 to the lawful issue of Melinda Schmidt, who were uncertain in number at the time of the gift (i. e., the death of the testator), and who are all to take in equal or some other definite proportions; the share of each being dependent for its amount upon the ultimate number. Hence it stands every test of the courts as to what constitutes a gift to a class. Matter of Kimberly, 150 N. Y. 90-93, 44 N. E. 945; Herzog v. T. G. & G., 177 N. Y. 86, 97, 69 N. E. 283, 67 L. R. A. 146. It is my opinion, therefore, that on the death of Melinda Schmidt the fund now held for her life vests absolutely in interest in all her descendants then in being, in equal portions per capita, and that neither Bache Schmidt nor any of her descendants who may die during the running of her life estate had or shall have any devisable or descendible interest in the fund.

Argued before WOODWARD, HOOKER, GAYNOR, RICH, and MILLER, JJ.

Edward Lauterbach (Walter Carroll Low, on the brief), for appellant.

Barclay E. V. McCarty, Henry W. Showers, and C. J. McDermott, for the respondents.

HOOKER, J. Many were the questions and difficult their character which were submitted to the learned trial court for its determination upon the hearing of this case. Although the record is exceedingly voluminous, yet by the terms of his requests to find, his excep-

tions, his notice of appeal, and the points he urged upon the argument, the appellant invites our consideration of but one substantial question, and this has to do with the construction of a certain part of the first paragraph of the will of George P. Pollen, deceased. The will was executed in 1875, and upon the testator's death, two years later, was admitted to probate as a testament sufficient to pass both real and personal property. That part of the will whose consideration is here involved reads as follows:

"To my daughter Melinda I also give the interest or income, as it accrues on two hundred thousand ($200,000) dollars during her natural life. The said amount to be set apart in such good dividend paying stocks and bonds as may stand in my name at the time of my decease, and at the then market value of the same. And, at her death, I will that the said amount of two hundred thousand dollars go to her legal issue, in equal portions, after they severally reach the full age of twenty-one years."

Mr. Pollen was survived by two daughters, namely, one, Ann Eliza Leggett, since deceased, and the plaintiff, Melinda P. Schmidt, who is also named as a defendant in another capacity. These were his only heirs at law and next of kin. He was likewise survived by ten grandchildren, five of whom were the children of his daughter Ann Eliza, and the other five the children of his daughter Melinda P. Schmidt. These ten grandchildren were in existence at the time of the execution of Mr. Pollen's original will. Of the five children of Melinda P. Schmidt, Bache M. Schmidt died shortly before the commencement of this action, leaving a will which has been duly admitted to probate. His mother has been appointed executrix and has qualified as such. He left creditors, and, subject to their claims, devised all his property to his mother. Another child of Melinda P. Schmidt, George P. P. Schmidt, died before the commencement of this action, leaving no will and no children, but a widow. A third son, John W. Schmidt, also died before the commencement of this action, leaving no children, for he was never married. A fourth child is her daughter, Elise M. Jewett, who had seven children. The fifth child, Fritz L. Schmidt, Jr., the appellant, has two children. These nine grandchildren of Melinda P. Schmidt are infants and parties defendant, and are represented by their respective guardians ad litem.

The question raised by Fritz L. Schmidt, Jr., the appellant, son of Melinda P. Schmidt, is whether these nine grandchildren, who were not in being at the time of Mr. Pollen's death, are remaindermen in the property, the subject of the provision of that part of the will which has been quoted. The appellant claims that the testator, by his use of the term "legal issue," meant his "children," and the respondents, the guardians ad litem of the nine infant grandchildren of Melinda P. Schmidt, claim that the testator meant "descendants." Our conclusion is that the claim of the guardians ad litem is correct, and the judgment must be affirmed. We are content to rest our decision of this case and that of the effect of the judgment in Colgate v. Schmidt upon the reasoning of the learned court below. That part of its opinion which deals with this question is reported herewith.

The judgment should be affirmed, with one bill of costs to each of the guardians ad litem who filed briefs in this court, and one bill of

costs to the other respondents, payable out of the funds which will be created from the sale of the property directed in the judgment. All concur.